Plaintiff appealed from judgment rejecting his demand for workmen's compensation on the theory that while ending-up a three hundred pound block of ice in his employer's plant, about the hour of 6:30 P.M., December 4, 1940, he sustained a right inguinal hernia, which produced permanent total disability. Laboring under the belief that plaintiff was disabled to work because of the above stated reason, defendant's insurer paid him compensation until March 26, 1941. Payments thereafter being discontinued, this suit was instituted against the employer only. Trial was concluded February 26, 1942.
Defendant, firstly, denies that plaintiff sustained an accidental hernia of any character; and, secondly, pleads that if he did have such an experience he had fully recovered from its disabling effects. Defendant avers that through error as to his real physical condition plaintiff was paid compensation to March 26, 1941.
The primary question tendered is whether the evidence in the case establishes that plaintiff through accident at the time and place alleged, sustained a hernia. If this question is resolved against him, secondary questions will pass from the case.
This case presents the not infrequent situation (approaching the proverbial) of diametrical conflict in the opinions of highly reputable and experienced physicians touching a matter falling within the sphere of their special training and experience about which, as was said in Mason v. Southern Kraft Corp., La.App.,6 So.2d 757, there should be no serious dispute. Plaintiff had a hernia or he did not have one. Physicians testifying in his behalf support his allegations, while those introduced by defendant are equally certain no hernia exists or has ever existed in him.
No other person was present when the accident allegedly occurred. Plaintiff testified that he was moving blocks of ice into the storage room and as he lifted with *Page 718 
tongs a three hundred pound block, because of the lower right-hand corner of the block being broken off, it suddenly tilted to its right which jerked him, and the floor being coated with ice he slipped and fell over into a stooping position; that when his foot slipped he felt a burning, stinging sensation, accompanied by pain, in the right groin; that this particular block of ice was the last one to be removed that day; that he remained on duty until 11 o'clock P.M., his regular quitting hour, and that the injury bothered him all night; but, notwithstanding this, he returned to duty the next day and continued to do light routine work until quitting time; that the morning following the accident when he lifted a starting bar weighing approximately seventy pounds, he again felt the burning sensation in the right groin.
On December 6, 1940, two days after the alleged accident, plaintiff consulted Dr. B.F. Bremer, a local physician, who engages in general practice in the Town of Glenmora, Louisiana, where the accident happened. Dr. Bremer physically examined plaintiff and found "a definite protrusion of the abdominal viscus into the right inguinal ring", which means a hernial condition. The doctor testified that the viscus could be identified by inserting the finger in the ring, "definite objective evidence of a hernia." He advised an operation as the only means of correcting the ailment, to which plaintiff demurred. He then advised use of a truss and quietness for several days.
Plaintiff did not notify any agent or officer of his employer of the alleged accident prior to consulting Dr. Bremer, whom he knew acted for defendant when called upon to do so. It was upon Dr. Bremer's diagnosis that defendant's insurer paid compensation to March 26.
Dr. Bremer examined plaintiff one or more times before the accident (the dates thereof not being definitely fixed) and did not detect any evidence of hernia. He also examined him two or three times subsequent to December 6 and finally found that "the hernia was much improved; it was back in place and the ring was much smaller."
Dr. R.C. Scott, a local physician and surgeon, examined plaintiff on March 29, 1941, after receiving from him the facts of the alleged accident. He found the ring on each side enlarged, being about the same size, with slight bulging on the right side in the inguinal region. These conditions, he said, were positive proof of incipient hernia. He further testified that when plaintiff would cough or strain there would develop a slight bulging in the right inguinal region. However, the doctor did not think these symptoms sufficiently potential to warrant an operation. He also advised the wearing of a truss and performance of light work only.
Dr. Scott again examined plaintiff on October 19, 1941, four months prior to trial, and found him much improved. Only slight bulging on coughing was then noticeable. On January 13, 1942, he again examined him and testified that "the hernia was practically obliterated." He agreed with Dr. Bremer that resumption of heavy work would likely aggravate the potential hernial condition. At the date of trial Dr. Scott estimated that plaintiff's disability was from twenty-five per cent to fifty per cent but further added that many men worked regularly with hernial symptoms no more serious than those afflicting plaintiff.
At the request of the insurer's representative, on March 27, 1941, two days prior to Dr. Scott's first examination, plaintiff was examined by Drs. H.H. Hardy and McBride, surgeons in the City of Alexandria, Louisiana. Dr. McBride died before the case was tried and we are without his testimony. Plaintiff informed Dr. Hardy of the facts of the alleged accident and for this reason the doctor's examination was mainly directed to the locus of the reputed hernia. He found no evidence whatever of present or past hernial conditions, although his examination was made both while plaintiff was prone and standing. He is positive that had hernia been present on December 6, 1940, there would have been some tangible, visible evidence of it on March 27 following. He also testified that the inguinal rings were small, not relaxed nor enlarged, and that when the patient strained they would close almost completely, reflecting normal reaction. He further testified:
"Q. Doctor, from the history he gave, and assuming that he handled the cake of ice referred to about 6:30 P.M., on the 4th of December, continued to work until 11 o'clock that night, and returned to his work the next day, and worked as usual, and didn't go to a doctor until Thursday, what do you think with reference to whether or not it is reasonably possible for him *Page 719 
to have sustained the hernia in his right side, as a result of any sudden, severe strain, or trauma? A. It is hardly possible, in my opinion, for a man to injure himself to that extent, and still be able to work. An injury to an extent great enough to produce a true traumatic hernia, the pain and discomfort from it would be so severe that I do not see how a man could continue hard labor.
"Q. Please explain why you would expect the pain to be so severe that he could not continue at his normal labor? A. If a man sustained a true traumatic hernia, he has to tear the fascia which support the inguinal rings, and the inguinal canals. Now, if he tears these fascias it is the same as tearing the tissues anywhere else in the body; it is painful; it also results in bleeding in the tissues. In the inguinal region you have an unusual number of nerves, making the area extremely sensitive because of the tearing of the tissues and the bleeding about the injury initiating this nerve supply, the patient should have, and will have, unusual amount of pain from such an injury."
After receiving from Dr. Hardy a report of his findings and conclusions concerning plaintiff's physical condition, the insurer discontinued compensation payments.
Dr. P.K. Rand, experienced physician and surgeon in the City of Alexandria, Louisiana, examined plaintiff on April 2, 1942, with special reference to the existence of hernia. All the customary tests were made in addition to manipulation but no evidence nor symptoms whatever indicating present or past hernia were revealed. The anatomy in the inguinal region was found to be normal in all respects. Dr. Rand also examined plaintiff the day of trial and found his physical condition to be the same as it was when he previously examined him. He stated that during his long active career as a surgeon, he had observed and operated upon legion of men for hernia and that only three of such cases were of traumatic origin. The remainder, he stated, were due to congenital malformation and/or weakness of the structures in and about the hernial region. He thought it highly improbable that hernia could result from accident such as is alleged upon in this case, and added that if such had then occurred it would have been definitely present at the day of trial because an operation is the only cure for such a trauma. In this latter statement Dr. Rand is corroborated by all the doctors who testified.
Dr. R.O. Simmons, also of Alexandria, examined plaintiff at his request on April 2, 1941, giving special attention to the existence or nonexistence of hernia. His findings were identical with those of Drs. Hardy and Rand. Dr. Simmons' testimony is especially impressive because he has specialized in treating and operating upon hernias since 1903. Many hundreds, probably thousands of such cases, have had the benefit of his well-trained mind and skillful hands.
Drs. Simmons, Rand and Hardy have extensive industrial practices and are regularly called upon to physically examine men applying for employment with their various clients. Each stated definitely that he would approve plaintiff as being physically fit for employment requiring heavy work, if asked to examine him for such. Neither would approve an applicant, who, at the time, was afflicted with hernia.
With regard to the conflict in the testimony of the physicians who testified in the case, we quote with approval the following portion of the trial judge's written reasons for judgment, to-wit: "The court knows personally all of the physicians who testified. Personally and professionally they are all men of excellent repute in their respective communities. All of them, with the exception of Dr. Bremer, have had considerable surgical experience with respect to the treatment of hernia. Dr. Bremer testified that surgery was the best and the accepted treatment for this trouble, and he recommended it in this case, but he had never administered this treatment himself. The medical testimony of the physicians experienced in the accepted treatment of hernia, the court thinks, preponderates in favor of the defendant."
It is probable that plaintiff did experience some sort of injury in and about the right groin when striving to control the block of ice which was mistaken for hernia by Drs. Bremer and Scott. Such injury, according to these doctors, had for all practical purposes, passed away long prior to the time of trial. One very strong reason to support this conclusion is that had a real hernia been present on December 6, 1940, definite evidence of the pathology would have been extant at date of trial. Another reason arguing against the happening of hernia at the time claimed by plaintiff is that he would unlikely have *Page 720 
been able to continue work as was done by him for over a day thereafter. It is shown that when a traumatic hernia is suddenly created severe pain resulting from injury to and dislocation of nerves, tearing of tissues, etc., inevitably follows. These conditions almost uniformly are such as to render the injured person incapable of continuing work.
Plaintiff entered defendant's employment in 1925 and rendered service to it continuously to the time he claimed to have been injured. It is more than strange he did not report the alleged accident to a superior prior to consulting a physician of his own choice. However, this singular action would not of itself bar him from relief if the testimony in other respects warranted it. There is in the record evidence, admitted over strenuous objection, to the effect that no ice was "pulled" on December 4, and this being true, plaintiff, at least, is in error when he alleged and testified that he was injured while handling the block of ice on that date. It is certain, however, he consulted Dr. Bremer on December 6. The case does not, of course, hinge upon a specific finding on this issue of fact.
We are in full accord with the trial judge's conclusions that plaintiff has signally failed to make out a case. On the contrary, defendant has definitely proven the incorrectness of the allegations relied upon by him to recover. And, for these reasons, the judgment appealed from is affirmed, with costs.